IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| EDUCATION MANAGEMENT ) <br> SERVICES, LLC, ) <br> ) <br>     *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> MARK CADERO ) <br> ) <br>     *Defendant*. ) <br> ) | CIVIL ACTION NO. 5:14-cv-00587-HLH <br> [Removed from the 73rd Judicial District <br> Court of Bexar County, Texas] |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

**NOW COMES** Plaintiff, Education Management Services, LLC, files this Plaintiff's First Amended Complaint against Mark Cadero, and would respectfully show the Court as follows:

### PARTIES

1.      Plaintiff, Education Management Services, LLC ("EMS"), is a Delaware limited liability company, authorized to do business in the State of Texas, with its principal place of business in San Antonio, Bexar County, Texas.

2.      Defendant, Mark Cadero (the "Defendant") is an individual whose residence is 15159 Jack Pine Way, Magalia, California 95954, and there is a permanent resident of California.

## JURISDICTION AND VENUE

3. On July 2, 2014, Defendant removed this suit from the 73rd District Court in Bexar County, Texas, pursuant to 28 U.S.C. § 1441(b), on the basis of the Court's diversity jurisdiction under 28 U.S.C. § 1332(a). The parties to this suit are diverse, as EMS has its principal place of business in San Antonio, Texas, and Defendant is a citizen of California. Plaintiff disputes that the suit is within the subject matter jurisdiction of this court as the amount in controversy is less than $75,000.00.[1]

4. The Court has personal jurisdiction over Defendant, because the factual allegations and causes of action pleaded herein arise and/or are sufficiently related to the Defendant's contacts with the State of Texas, such that he may be subject to this Court's specific jurisdiction. Defendant has established minimum contacts with this forum state, and the exercise of personal jurisdiction comports with fair play and substantial justice. Defendant purposefully availed himself of the privilege of conducting activities in Texas, involving both the benefits and protections of state laws, and therefore subject to Texas jurisdiction.

5. Venue is proper in the Western District of Texas under 28 U.S.C. § 1441(a), because Defendant removed this suit from the 73rd District Court in Bexar County, Texas, which is encompassed by the Western District of Texas, San Antonio Division.

6. Venue is also proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in

---

[1] By the date of filing this First Amended Complaint Plaintiff either has or plans to file a Motion to Remand for lack of subject matter jurisdiction.

this district. Additionally, a substantial part of property that is the subject of the action is situated in this Western District of Texas.

## FACTS

7.      EMS is a subsidiary of Armando Montelongo Companies, Inc., which is owned by Armando Montelongo, Jr. ("Montelongo"), who is a successful San Antonio businessman.

8.      One of Mr. Montelongo's more successful business ventures is Armando Montelongo Seminars, which provides various real estate seminar and mentoring opportunities throughout the country. Customers of Armando Montelongo Seminars learn various proprietary and specially developed methods and techniques in "flipping homes" and maintaining "cash flow" rental properties.

9.      EMS is an affiliate of Armando Montelongo Seminars. EMS's main function is to provide administrative and staffing services to its affiliates, including Armando Montelongo Seminars. EMS provides services to its affiliates through various management services agreements. Thus, contractors or employees who desire to enter into business relationships with Armando Montelongo Seminars must contract with or be hired by EMS.

10.     Additionally, EMS owes an indemnification obligation to any affiliate harmed in connection with services provided under one of its management services agreements. Thus, when one of EMS's contractors or employees harms an affiliate, EMS has the obligation, to indemnify the harmed affiliate.

11. Montelongo, has been in the real estate seminar industry since 2006. By early 2010, Armando Montelongo Seminars ("AMS"), by way of Montelongo, had become well known in the seminar speaking industry for being an excellent place to work and earn a substantial income. Due to the company's national presence and large customer base, seminar speakers from across the seminar industry desired to come and work for AMS and speak for the company. Defendant was one such person (salesman) who deliberately sought out to enter into a business relationship with AMS.

12. On or about February 21, 2010, Defendant and EMS entered into a contractor agreement in which Defendant would perform services for EMS and its affiliated companies. Specifically, Defendant performed various services at real estate seminar events held by Real Estate Training International, LLC, d/b/a Armando Montelongo Seminars ("AMS"). The relationship between EMS and Defendant lasted for an initial period of at least six (6) months.

13. On or about August 1, 2011, Defendant and EMS re-contracted for Defendant's services by entering another contractor agreement. During his second stint providing services to EMS, Defendant once again provided services principally to AMS. However, this time around, Defendant specifically "closed" sales to potential AMS customers at AMS live events.

14. Finally, on or about January 1, 2013, EMS made an offer of employment to Defendant, which Defendant gladly accepted. Attached hereto as Exhibit A. The majority of Defendant's employment with EMS consisted of him working at AMS seminar events. While employed by EMS, Defendant would make sales to attendees/potential customers of AMS, as a closer. A closer at AMS events makes the hard sale to event attendees.

15. For over three (3) years Defendant either performed services for or was employed by EMS. During this time Defendant received access to and was taught highly specialized and proprietary sales training developed by EMS staff, including Montelongo, himself, and EMS's affiliates. Defendant also received access to and specialized training regarding EMS and its affiliates' proprietary and unique business development strategies, training materials, teaching materials, vendor lists, student testimonials, photographs, etc. (herein referred to as "Trade Secrets"). Specifically, Defendant received proprietary compliance training regarding various state and federal consumer protection rules. This compliance training was developed by EMS employees, including its in-house attorneys. To EMS's knowledge and belief, there is no other real estate seminar company in the country that provides such training.

16. During his tenure as an employee and independent contractor, Defendant traveled Bexar County, Texas, on a regular basis in order to receive access to Plaintiff EMS and its affiliates' Trade Secretes. After receiving the Trade Secretes, Defendant would utilize the Trade Secrets in making sales at AMS seminar events held throughout the country.

17. When Defendant entered his 2013 Employment Agreement with EMS, Defendant also entered into a non-compete agreement with EMS and its affiliates. Attached hereto as Exhibit B. Defendant agreed to be bound by the following terms of the non-compete agreement,

> *"Except as Company and/or Affiliates may waive or modify in its sole discretion, during Employee's business relationship with Company and/or Affiliates and for a period of thirty-six (36) months following the effective termination date of Employee's business relationship with Company and/or Affiliates, for any reason, regardless of whether initiated by Employee or Company and/or Affiliates, Employee shall not directly or indirectly, own, manage, operate, control, or be employed by, perform any services for, consult with, solicit, business for, participate in, or be connected with the ownership, management, operation or control of any business, other than the Company and its subsidiaries or affiliates,*

> *which performs services or sells products similar to, or competitive with, those provided by the Company or any of its subsidiaries or affiliates, in the State of Texas and any other state, country, or territory in which the Company or any of its subsidiaries or affiliates conducts business."*

18. Along with the non-compete agreement, Defendant entered into a non-disclosure agreement, a non-circumvent agreement, and a non-solicitation agreement with EMS and its affiliates. Attached hereto as Exhibit C. Defendant agreed to be bound by the following terms of the non-disclosure agreement:

> *"Employee agrees to never use or disclose, directly or indirectly, for any reason whatsoever or in any way other than at the direction of the Company and/or Affiliates, or after receipt of the prior written consent of Company and/or Affiliates, any Confidential Information of Company and/or Affiliates. Specifically, Employee agrees not to utilize, disclose, copy, duplicate or publish all or any part of, nor lend nor permit the disclosure, copying or duplication or publication of all or any part of the Confidential Information of Company and/or Affiliates (including but not limited to books, records, client lists, software, electronic files, customer lists, or any other documents or materials related to the business of Company and/or Affiliates) to any person or entity, except with the express prior and written consent of Company and/or Affiliates. Further, Employee shall maintain the confidentiality of all Confidential Information of Company and/or Affiliates for the sole use and benefit of Company and/or Affiliates."*

19. On or about July 1, 2013, Defendant resigned from his employment with EMS. Subsequently, on or about December, 2013, EMS became aware Defendant had begun to work for/with Nick Vertucci. Nick Vertucci currently owns and runs a real estate seminar company that directly competes with Armando Montelongo Seminars.

20. Upon information and belief Defendant continues, either as an employee or independent contractor, to work for/with Nick Vertucci's competitive seminar company. This has been confirmed by Defendant's picture being put on the "About Us" section of Nick Vertucci's company's website. Attached hereto as Exhibit D.

21. Upon information and belief, Defendants works for Nick Vertucci's seminar company in a similar or same exact capacity as he did while employed by EMS. Moreover, upon information and belief, Defendant works with/for Nick Vertucci's seminar company in a product development and managerial capacity. Specifically, Defendant has and continues to directly contributed to the sales strategy that Nick Vertucci's seminar company uses in his competing real estate training seminar events, and was disclosed to Defendant by EMS.

22. Upon information and belief, Defendant has and continues to use EMS's Trade Secrets to the detriment of EMS. Defendant has used and continues to use various teaching materials and methods obtained by Defendant while employed by with EMS. Specifically, Defendant has and continues to use EMS's proprietary state and federal regulatory compliance training (including the compliance materials he received for the training). Defendant has an continues to use the Trade Secretes for his own benefit and in direct competition with EMS.

23. EMS has and continues to be harmed by Defendants' intentional and malicious, actions, which are in direct violation of the contract between the parties. This breach has harmed EMS, because EMS spent significant time and expense developing its Trade Secrets and training Defendant. Moreover, Defendant's working for a direct competitor puts EMS and its affiliates at a competitive disadvantage. Defendant has taken EMS and its affiliates' confidential and proprietary information and disclosed such information to a direct competitor. Additionally, Defendant's working for a direct competitor of EMS and its affiliates allows Defendant to materially benefit the direct competitor by using EMS's Trade Secretes. This is a material breach of his non-compete agreement with EMS.

## IV.
## CONDITIONS PRECEDENT

24. All conditions precedent necessary to maintain this action have been performed, have been waived, or have occurred.

## V.
## CAUSES OF ACTION

### Count 1: Breach of Contract

25. EMS incorporates by reference the entirety of the above paragraphs 1-24 as though set forth in full herein.

26. In January of 2013, Defendant entered into an agreement with EMS wherein Defendant agreed to certain terms as enumerated herein-above. Defendant disclosed confidential information owned by EMS and its affiliates to a third party in direct violation of the contract in question. In addition, Defendant is currently working with and/or for a rival real estate seminar company that provides substantially similar and/or the same products and/or services as EMS and its affiliates in direct violation of the agreement between Plaintiff and Defendant.

27. As a result of these actions, Defendant is in breach of its agreement with EMS, which proximately caused EMS's damages, including but not limited to lost revenue, brand damage, damage to good will, and the value of the disclosed Trade Secretes, in an amount according to proof at the time of trial.

### Count 2: Conversion

28. EMS incorporates by reference the entirety of the above paragraphs 1-24 as though set forth in full herein

29. EMS and its affiliates, are the owners of various proprietary information including manuals, client lists, and other employee files threatened with irreparable injury by the conduct of the Defendant.

30. Defendant has wrongfully exercised dominion and control over EMS and its affiliates' proprietary information and materials listed above. Defendant has taken this property for his own purpose and has caused detriment to EMS.

31. Defendant's wrongful actions have proximately caused injury to EMS, which has resulted in damages.

32. As a result, EMS seeks the immediate return of all information and materials regarding EMS and/or its affiliates.

33. EMS's injury resulted from Defendant's malice or actual fraud, which entitles EMS to exemplary damages under Texas Civ. Prac. & Rem. Code section 41.003(a).

### Count 3: Trade Secret Misappropriation

34. EMS incorporates by reference the entirety of the above paragraphs 1-24 as though set forth in full herein.

35. On or after September 1, 2013, Defendant took and used information that constitutes EMS and its affiliates' Trade Secrets. The Trade Secrets, as described above, were

known only to EMS, its licensees, and affiliates. Additionally, the Trade Secretes are not widely circulated, are actively protected, are extremely valuable, and are not easily duplicated. EMS, through extensive time, labor, skill, and money, has created unique and proprietary trade secret information. Because this information has great value to EMS and its affiliates and their competitors, measures are taken to see that such information remains confidential. Defendant's use of that confidential and trade secret information has given the Defendant an unfair competitive advantage that Defendant obtained free of charge.

36. Defendant acquired this information knowing that it was protected. Defendant was provided access to this confidential information pursuant to the terms of his written Employment Agreement with Plaintiff including provisions of confidentiality set forth therein. Following his resignation, Defendant was not authorized to use and/or disclose said confidential information and Trade Secrets. Defendant has misappropriated EMS and its affiliates' Trade Secrets and/or confidential and proprietary information for his own use or use by others.

37. Defendant's misappropriation of the Trade Secrets and confidential information was willful and malicious.

38. EMS has incurred substantial damages as a direct and proximate result of the Defendant's use and disclosure of the Trade Secrets and confidential and proprietary information, and seeks the actual loss caused by Defendant's misappropriation.

39. Defendant has been unjustly enriched by Defendant's misappropriation of the Trade Secrets, and EMS seeks recovery on the value of amount that Defendant has been unjustly enriched by his misappropriation of the Trade Secrets.

40. Defendant's actions are exceptional within the meaning of the Texas Uniform Trade Secrets Act Tex. Civ. Prac. & Rem. Code § 134A.003. Since Defendant has already disclosed and/or utilized the Trade Secrets, such disclose and/or use may not be preventable. Therefore, in lieu of injunctive relief, EMS seeks to recover a reasonable royalty as a condition of Defendant's future use of its Trade Secretes.

41. Further, pursuant to Tex. Civ. Prac. & Rem. Code § 134A.004, EMS is entitled to recover exemplary damages for Defendant's willful and malicious misappropriation of the Trade Secrets.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Education Management Services, LLC ("Plaintiff"), respectfully prays that Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for the following:

a. Actual and Punitive damages;

b. Costs of suit;

c. Attorney's fees;

d. Prejudgment and post-judgment interest;

e. An accounting;

f. Disgorgement of profits;

g. All other relief, in law and in equity, to which Plaintiff may be entitled.

Respectfully submitted,


By: /s/ Andew J. Moon
    ANDREW J. MOON
    State Bar No. 24046463
    RYAN A. QUIROZ
    State Bar No. 24066799
    2935 Thousand Oaks Dr. #6-285
    San Antonio, Texas 78247
    (210) 933-6445 Tel
    (866) 561-4558 Fax
    ATTORNEYS FOR PLAINTIFF