IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EDUCATION MANAGEMENT SERVICES, LLC, | § § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. 5:14-cv-00587-HLH |
| v. | § § | [Removed from the 73rd Judicial District Court of Bexar County, Texas] |
| MARK CADERO, | § § | |
| *Defendant.* | § § § | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e)

Defendant Mark Cadero ("Cadero" or "Defendant"), files this opposition to the Motion to Alter or Amend Judgment filed by Plaintiff Education Management Services, LLC ("Plaintiff"). [D.E. 23]. As set forth below, Plaintiff has not demonstrated that an amendment to this Court's final judgment as to the misappropriation of trade secrets claim is warranted. In support of this Opposition, Cadero states as follows:

**I.    BACKGROUND**

Plaintiff filed its First Amended Complaint on October 1, 2014. [D.E. 9]. In response, Cadero filed a motion to dismiss on October 15, 2014. [D.E. 14]. In the Motion, Cadero stated that Plaintiff's misappropriation of trade secrets claim should be dismissed because the claim was not supported by the alleged facts and was duplicative of the breach of contract claim. *Id.* at p. 6. In other words, the asserted tort claim of misappropriation was not independent of, and was based on, the breach of contract claim. *Id.*

In opposition, Plaintiff asserted that the TEXAS UNIFORM TRADE SECRETS ACT, TEX. CIV. PRAC. & REM. CODE §134A.007(b)(1), ("TUTSA"), allows for a misappropriation claim to be maintained in addition to and independent of other contractual remedies. [D.E. 16, pp. 9-10]. Cadero countered, noting that under the TUTSA, Plaintiff failed to identify any "trade secrets" that were allegedly stolen or being used by Cadero and cited to no case law that permitted it to seek damages based on the same alleged misconduct for both the breach of contract claim and misappropriation claim. [D.E. 16, pp. 5-6].

Ultimately, this Court granted Cadero's Motion to Dismiss as to the misappropriation claim, finding that "Plaintiff has not alleged that the Defendant acquired knowledge of any trade secrets by using improper means – an essential element of a misappropriation claim under TUTSA." [D.E. 18. p. 6]. This Court further noted that Plaintiff was attempting to hold Defendant liable under TUTSA based only on his breach of the non-disclosure agreement. *Id*. "Because the Plaintiff has not alleged facts establishing the breach of any legal duty independent of the non-disclosure agreement, its claims sound only in contract." *Id*.

Plaintiff disagrees with the Court. On December 15, 2014, Plaintiff filed the present Motion to Alter or Amend the Court's judgment[1]. For the reasons stated below, the Plaintiff's arguments lack merit and the Court's Order [D.E. 18] should stand.

---

[1] In seeking to alter or amend the judgment in this case, Plaintiff makes three arguments. First, Plaintiff asserts that TUTSA permits plaintiffs to maintain breach of contract claims regardless of whether the breach constitutes misappropriation. [D.E. 23, p. 3]. Second, Plaintiff argues that Texas common law allows misappropriations claims based on a breach of a non-disclosure agreement. *Id*. Third, Plaintiff alleges the Court erred in finding that Defendant did not breach an independent duty owed to Plaintiff not to disclose or use its trade secrets. *Id*.

## II. ANALYSIS

### A. Plaintiff's Motion to Alter or Amend Judgment is untimely.

Plaintiff's Motion to Alter or Amend Judgment is untimely under Rule 59(e). Rule 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Assuming it is timely filed, District Courts have considerable discretion in deciding whether to grant or deny a motion to alter a judgment. *See Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995); *Godwin Gruber, P.C. v. Deuschle*, 2003 WL 21293186, at *1 (N.D. Tex. May 28, 2003). Although the courts must strike a balance between the need for finality and the need to render just decisions, the Fifth Circuit favors the denial of motions to alter or amend judgments under Rule 59(e). *See Southern Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

The Court issued the Order on the Motion to Dismiss the First Amended Complaint on **October 1, 2014**. Under Rule 59(e), Plaintiff had up to and including October 29, 2014 to file the present Motion. Waiting until **December 15, 2014**, Plaintiff completely failed to address its nearly two month delay in filing the present Motion. To assert a successful motion to alter or amend judgment, the moving party "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Simon v. U.S.*, 891 F.2d 1154, 1159 (5th Cir. 1990); *see Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004). Plaintiff's delay filing of the present Motion causes prejudice to Cadero because Cadero has timely filed his Answer, Affirmative Defenses and Counterclaims, and is ready to move forward on discovery and he must now oppose Plaintiff's current motion to dismiss. [*See* D.E. 24]. With holiday office absences and a pending deadline to amend the present pleadings of December 30, 2014, [*see* D.E. 20], Cadero is now faced with the possibility of having to amend his Answer and

Affirmative Defenses in the event that the present judgment on the misappropriation claim is altered or amended after the deadline of December 30, 2014.

Using its broad discretion, this Court should dismiss Plaintiff's motion as untimely. *See Gonzalez v. State Fair of Texas, Inc.*, 235 F.3d 1339 (5th Cir. 2000) (affirming the district court's denial of the Rule 59(e) when the moving party failed to offer a valid excuse for its untimely filings).

**B.    The Misappropriation Claim was properly dismissed.**

**1.    *Cadero's alleged breach of the non-disclosure provisions is not "improper means."***

While Cadero asserts the untimeliness of the Plaintiff's motion should be fatal to its consideration, even if it is considered by the Court, it should still be dismissed. Plaintiff's arguments hinge on its position that the definition of "improper means" under the TUTSA is broad, and the statute also includes a breach of a contractually imposed duty to maintain secrecy. [*See* D.E. 23, pp. 4-5]. Under TUTSA, "improper means" is defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret, or espionage through electronic or other means." TEX. CIV. PRAC. & REM. CODE §134A.002(2)[2].

---

[2] A person may misappropriate a trade secret by disclosing or using a trade secret of another without express or implied consent by a person who:

(i) used improper means to acquire knowledge of the trade secret;

(ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was: (a) derived from or through a person who had utilized improper means to acquire it; (b) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (c) derive from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limits its use; or

(iii) before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

TEX. CIV. PRAC. & REM. CODE §134A.002(3)(B).

The statute merely recognized there are ways that employees, contractors, competitors, etc. can acquire trade secrets of another through "improper means" and seeks to hold such persons responsible for such acquisitions and breaches.  A careful reading of TUTSA and its legislative history demonstrates that TUTSA was enacted to cover situations where employees, joint venture parties, and fiduciaries acquire trade secrets – not through the traditional means of signing a non-disclosure or confidentiality agreement, as is the situation with Cadero, but where there is not otherwise a written agreement between the parties through such improper means as "theft, bribery, misrepresentation, breach of a common-law fiduciary duty or other duties, and electronic espionage – *i.e.,* hacking – are all improper means of acquiring confidential information and activities that are not normally covered by written confidentiality agreements.

Contrary to Plaintiff's assertion, the Court was correct in finding that Cadero had not acquired any trade secret information through improper means.  [*See* D.E. 18, p. 6].  There is absolutely no allegation in the Amended Complaint demonstrating that Cadero acquired any trade secret information through "improper means."  While Cadero disputes that he received any "trade secrets" of Plaintiff, even if the Court accepts, *arguendo,* that the Plaintiff had some protectable "trade secrets" that Cadero was provided, the Amended Complaint supports the opposite inference that Cadero acquired the alleged "trade secrets" by improper means. Plaintiff willingly gave it to him.  Plaintiff specifically asserts that Cadero acquired "confidential information pursuant to the terms of his written Employment Agreement with Plaintiff including provisions of confidentiality set forth therein." [D.E. 9, ¶36].  Plaintiff only asserts that Cadero was not authorized to disclose or use the alleged trade secrets he acquired following his resignation.  *Id.*  If Plaintiff can prove that he disclosed trade secrets, the Plaintiff can prove a breach of contract.

Completely absent from the Amended Complaint are any allegations that Cadero engaged in theft, bribery, or electronic espionage, or that he breached a separate common-law duty giving rise to fiduciary duties to maintain secrecy such as attorney-client, doctor-patient, trustee-beneficiary, officer, director, etc.  Furthermore, the case upon which Plaintiff relies on to support its position is distinguishable.[3]  By presenting evidence that the defendant planned to launch a competing product by using the plaintiff's trade secrets, the Court found that there was a substantial likelihood of success on the merits of the trade secret misappropriation claim.

Here, Plaintiff has not identified any trade secrets that Cadero allegedly obtained. Additionally, there is no separate basis for finding that Cadero, a front end road sales employee/independent contractor, was in a confidential relationship that would create separate and independent duties with Plaintiff at any point, from those duties set forth in the Confidentiality Agreement he signed.  There are absolutely no allegations that Cadero, in the course of a non-contracted "confidential relationship" with Plaintiff, used any of Plaintiff's alleged trade secrets to compete.

### 2. *Texas common law does not support the proposition that a breach of the non-disclosure provision constitutes improper means under the TUTSA.*

Plaintiff asserts that Texas common law supports the proposition that a breach of a confidentiality agreement itself constitutes improper means for the purpose of misappropriation claims.  [*See* D.E. 23, pp. 5-6].  The cases Plaintiff cites to support this assertion do not deal with a breach of contract claim and misappropriation claim between a former, low-level employee and

---

[3] In *Mobius Medical Systems, LP v. Sun Nuclear Corp.*, 2013 WL 6498981 (S.D. Tex. Dec. 10, 2013), the plaintiff, a software developer, sought an injunction against the defendant, a distributor of the plaintiff's product. Following an evidentiary hearing where the plaintiff presented evidence of its trade secrets that defendant had acquired improperly through their negotiations and used to compete that would create separate and independent duties, the Court indicated that the distribution agreement between the parties was evidence of a confidential relationship, which imposed a duty on the defendant not to use its trade secrets. *Id*. at *14.

the employer.[4]  They deal with separate common-law legal relationships arising from the business conduct between their businesses.  One case involves outright espionage.  *See E.I. duPont deNemours & Co., Inc. v. Christopher, et al.*, 431 F.2d 1012 (5th Cir. 1970).  Another is wholly unrelated to the matter before this Court.  *See In re Cooper Tire & Rubber Co.*, 313 S.W.3d 910 (Tex.App. – Houston [14th Dist.] 2010) (products liability action).

In a case cited by Plaintiff that touches on the issue of a confidential relationship among the Parties, there was a question of fact because the record evidence was scant, and the President of the Corporation informed the individual (who was not a former employee of the plaintiff) of the confidentiality that was expected.  *See Metallurgical Indus., Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1203-04 (5th Cir. 1986).  Additionally, the second defendant who was being considered on appeal for confidentiality purposes was another corporation. *Id*. at 1204.

### 3.     *Plaintiff did not allege an independent duty not to disclose trade secrets*.

Plaintiff attempts to distinguish *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493 (Tex. 1991).  However, it is not a matter of distinguishing the case because *DeLanney*, which is still upheld in Texas, stands for the proposition that "[w]hen the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract."  *Id*. at 494.  The question is whether the defendant's conduct would give rise to liability, independent of any contract between the parties.  *See id*.  Based on Plaintiff's allegations in the Amended Complaint, Cadero's alleged conduct would not give rise to liability independent of the non-disclosure provision.

---

[4] *See Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, LLC*, 637 F.3d 604 (5th Cir. 2011) (corporate owner of a meat-packing method against a corporate wholesaler); *Sikes v. McGraw-Edison Co.*, 665 F.2d 731 (5th Cir. 1982) (developer of a lawn trimmer against a manufacturer); *Hyde Corp. v. Huffines*, 158 Tex. 566 (Tex. 1958) (licensor against a licensee); *Versata Software, Inc. v. Infosys Technologies, Ltd.*, Case No. 1:10-cv-00792-SS, D.E. 71 (W.D. Tex. Sept. 9, 2013) (two software companies).

As this Court noted, Plaintiff bases its TUTSA claim on the following contested assertion: "Defendant agreed not to disclose the Plaintiff's trade secrets to any third party, the Plaintiff disclosed trade secrets to the Defendant pursuant to that agreement, and the Defendant disclosed those trade secrets to a third party in violation of the agreement." [D.E. 18, pp. 5-6]. But accepting Plaintiff's own allegation as true that "Defendant was provided access to this confidential information pursuant to the terms of his written Employment Agreement with Plaintiff including provisions of confidentiality set forth therein," [D.E. 9, ¶36], based on Plaintiff's own assertions for this claim, Cadero acquired the trade secrets by authorized means. Therefore, Plaintiff's alleged TUTSA rests squarely on Cadero receiving confidential information **pursuant to the Agreement** and then allegedly breaching the non-disclosure provision—assertions based specifically on the contract and, if proven true, would be a breach of contract. The Court properly dismissed Plaintiff's TUTSA claim. *See Vikon Int'l, Inc. v. Sensorlogic, Inc.*, 2009 WL 2474669, at *8 (N.D. Tex. Aug. 12, 2009) (finding that the plaintiff failed to state a cause of action on its misappropriation of trade secrets claim to the extent that it was based on information covered by the contract in the plaintiff's breach of contract claim).

Plaintiff asserts that "regardless of whether a duty not to disclose or use a person's trade secrets arises from an express or implied agreement, it is always a separate and independent tort when this duty of confidentiality [sic] [is] breached." [D.E. 21, p. 10.] In the cases cited by Plaintiff, there was no contract establishing the confidential relationship among the parties. For example, the cases cited by Plaintiff focus on the allegations to support a tort claim, and there is no indication that there was also a claim for breach of a non-disclosure provision. *See Zoecon Industries, Div. of Zoecon Corp. v. American Stockman Tag Co.*, 713 F.2d 1174, 1176 (5th Cir. 1983) (claims of misappropriation of trade secrets, but not breach of a non-disclosure

agreement); *Metallurgical Indus., Inc.*, 790 F.2d at 1203-04 (considering a breach of confidential relationship, not breach of non-disclosure agreement).  Further, the Texas Supreme Court has noted that whether a confidential relationship exists is based on the facts of each case.  S*ee Hyde Corp. v. Huffines*, 314 S.W.2d 762, 777 (Tex. 1958).  While there is no dispute that a breach of a confidential relationship may also give rise to a breach of contract claim if there is a separate contract, the reverse is not true:  absent a separate confidential relationship, a breach of contract does not create a separate tort of misappropriation.  In this case, as discussed above, the breach of a non-disclosure provision cannot be the **sole** basis for a misappropriation of trade secrets claim.  In order to maintain a separate claim from misappropriation, there must be a separate basis for the duty not to disclose.  There is absolutely no assertion in the Amended Complaint that Cadero breached a "confidential relationship" with Plaintiff. [*See* D.E. 9].

### C.   Public policy precludes double recovery for a single injury.

Despite Plaintiff's assertion, Texas is in no way bound to follow the determinations from other jurisdictions. Furthermore, Plaintiff's assertion that the Court's ruling negates the purpose of TUTSA is baseless and shows a lack of understanding of the purpose of TUTSA.  TUTSA was intended to codify common-law bases for misappropriation of trade secrets – not to duplicate claims that arise from a contract breach.  Plaintiff did not assert its misappropriation of trade secrets claim in the alternative to its breach of contract claim.  Instead, Plaintiff seeks to recover **both** on the contract and in tort for the same alleged misconduct, which would result in double recovery. [*See* D.E. 21, pp. 10-11 (seeking the value of amount of unjust enrichment,

actual loss, reasonably royalty, and exemplary damages)]. Double recoveries are not permitted because "with only one injury, there can, in justice, be but one satisfaction for that injury."[5]

The TUTSA displaces conflict tort law, but does not affect contractual remedies. *See* TEX. CIV. PRAC. & REM. CODE 134A.007(a), (b)(1). As such, the one satisfaction rule still stands. *See Myriad Development, Inc.*, 817 F. Supp. 2d at 984 (prohibiting the prevailing plaintiff from recovering reasonably royalties and lost profit damages).

### III. CONCLUSION

Based on the foregoing, Cadero respectfully requests that this Court deny Plaintiff's Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e).

Respectfully submitted,

 */s/ Clint A. Corrie*
Clint A. Corrie
Texas Bar No. 04840300
clint.corrie@akerman.com
**AKERMAN LLP**
2001 Ross Avenue, Suite 2550
Dallas, Texas 75201
Telephone: 214.720.4300
Facsimile: 214.981.9339

**ATTORNEYS FOR DEFENDANT
MARK CADERO**

---

[5] *Myriad Development, Inc. v. Alltech*, Inc., 817 F. Supp. 2d 946, 982 (W.D. Tex. 2011) (citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 8 (Tex. 1991)); s*ee American Nat'l Petroleum Co. and Oil Investments, Ltd. v. Transcontinental Gas Pipe Line Corp.*, 798 S.W.2d 274, 283 (Tex. 1990) ("[The plaintiffs] cannot receive both their actual damages in contract and their actual damages in tort without receiving a double recovery."); *Mobil Chemical Co. v. Blount Brothers Corp.*, 809 F.2d 1175 (5th Cir. 1987) ("The rationale of the 'one satisfaction' rule is that double recoveries are against public policy.") (citation omitted); *see also Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184-85 (Tex. 1998) (noting that lost profits are recoverable both as tort and contract damages but subject to the rule precluding double recovery for a single injury).

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been served electronically via the Court's Electronic Case Filing (ECF) System, or via U.S. Mail, first class, postage prepaid, facsimile or hand delivery in accordance with the FEDERAL RULES OF CIVIL PROCEDURE on the following counsel of record on this 22nd day of December, 2014:

    J. Wes Huesser, II, Esq.
    weshuesser@yahoo.com
    Andrew J. Moon, Esq.
    andrew.j.moon@gmail.com
    andym@teamarmando.com
    2935 Thousand Oaks Drive, #6-285
    San Antonio, Texas 78247

                              */s/ Clint A. Corrie*
                              Clint A. Corrie